UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| VICKIE BOLEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:08-CV-66 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Vickie Bolen, who is proceeding *pro se*, appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB").[1] (*See* Docket # 1.) For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. PROCEDURAL HISTORY

Bolen applied for DIB on August 12, 2004, alleging that she became disabled as of March 15, 2003. (Tr. 90-92.) The Commissioner denied her application initially and upon reconsideration. (Tr. 72-82.) On March 23, 2007, Administrative Law Judge (ALJ) Steven Neary conducted a hearing at which Bolen (who was represented by counsel), Bolen's daughter, and a vocational expert ("VE") testified. (Tr. 51-71.) On July 9, 2007, the ALJ rendered a decision finding that Bolen was disabled from March 15, 2003, through August 1, 2006, but that as of August 2, 2006, she was no longer disabled. (Tr. 15-29.) Bolen submitted a request for

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

review to the Appeals Council, which the Appeals Council denied (Tr. 6-11), making the ALJ's decision the final decision of the Commissioner.

Bolen filed a *pro se* complaint with this Court on March 5, 2008, seeking relief from the Commissioner's final decision. (Docket # 1.) She argues that the ALJ ignored her low scores in memory testing and improperly evaluated the opinion of her treating psychiatrist, Don H. Smith, M.D. (Pl.'s Br. 1-2.)

## II. FACTUAL BACKGROUND[2]

### A. Background

Bolen was forty-six years old at the time of the ALJ's decision. (Tr. 90.) She completed eleventh grade and had past work experience as a press operator/machine operator. (Tr. 105-06, 110.) In her Disability Report, she alleged disability due to brain aneurysm, seizures, right shoulder pain, "loss of strength in right side," ulcers, high blood pressure, and "nerves." (Tr. 104).

### B. Summary of Relevant Medical Evidence

In March 2003, Bolen suffered an aneurysm that necessitated surgery and resulted in neurological problems requiring her to undergo physical, occupational, and speech therapy. (Tr. 139-40, 143-44, 162, 174-75.) Upon completion of inpatient therapy, Bolen achieved "[p]rogressive improvement" in activities of daily living, self-care, ambulation, transfers, and cognition. (Tr. 174, 182.) A neurological consultation in May 2003 noted that she had a little trouble with recent memory (Tr. 190-91), and testing with a speech/language pathologist

---

[2] The administrative record in this case is 474 pages, and the parties' disputes involve only small portions of it. Therefore, in the interest of brevity, this opinion recounts only the portions of the record necessary to the decision.

revealed "mild/moderate" impairment of cognition, yet functional communication abilities and improvement and progression from initial testing (Tr. 248). In July 2003, however, Bolen had another aneurysm requiring surgery. (Tr. 192-93.) She also underwent a hysterectomy in November 2003. (Tr. 208-09.)

Bolen subsequently experienced seizures, and in January 2004, she went to the emergency room after having one at work. (Tr. 215-16.) Her doctor adjusted her medications. (Tr. 216.) Then, in February 2004, after an MRI revealed cervical spondylosis at C4-5 and C5-6, she underwent another surgery, an anterior cervical diskectomy and fusion with William Young, M.D. (Tr. 221-22.) Bolen participated in physical therapy following the surgery. (Tr. 232-38.)

Bolen had another seizure while driving in June 2004, and Madhav Bhat, M.D., her treating neurologist, increased the dosage of her medication. (Tr. 269-70.) The hospital records indicate that Bolen had not been taking her seizure medication. (Tr. 273.)

Dr. Young saw Bolen again in July 2004 for complaints of residual discomfort in the neck and right arm following her spinal surgery. (Tr. 277-78.) An MRI of her cervical spine reflected a moderate left neural foraminal and mild right neural foraminal narrowing at the C5-6 level with a small to moderate sized posterior disc osteophyte (Tr. 296), and an electromyogram/nerve conduction study was normal (Tr. 304-05). In September 2004, Dr. Young noted that although her condition had improved, Bolen still complained of residual neck and right arm discomfort. (Tr. 346.) On examination, Bolen's motor strength and sensation were normal, and reflexes were depressed but symmetrical. (Tr. 346.) Dr. Young remarked that injection therapies were unsuccessful. (Tr. 346.)

In October 2004, Venkata K. Kancherla, M.D., performed a consultative examination of

Bolen at the Agency's request. (Tr. 323-25.) Bolen reported that after her cervical surgery she "got better" and was released with restrictions in August 2004. (Tr. 323.) Bolen also stated that because she was still having seizures, Dr. Bhat changed her medication. (Tr. 323.) Bolen also indicated that she did not need help performing chores other than with transportation. (Tr. 323.) She reported headaches and occasional blurred vision when watching television, and was aggressive and uncooperative during the examination but subsequently apologized. (Tr. 324.) Dr. Kancherla observed that Bolen got on and off the examination table without assistance (Tr. 324); her reflexes and sensation were normal except vibration sensation over the right upper extremity (Tr. 325); her vision was nearly normal (Tr. 325); and her muscle strength, gait, and dexterity were normal (Tr. 325). She also noted that Bolen's memory was intact. (Tr. 324.)

Bolen also visited Dr. Bhat in that October, and he noted that she "has had no clinical recurrence of seizures since June 2004[,]" and "no longer experience[d] episodic loss of consciousness and fumbling and jerking of extremities." (Tr. 339.) Her motor strength, coordination, cranial nerves, language function, and tendon reflexes were normal. (Tr. 339.)

Daniel Hauschild, Psy.D., performed a consultative psychological examination of Bolen in November 2004 at the Agency's request. (Tr. 327-32). Bolen reported losing her temper and having suicidal thoughts. (Tr. 327.) She stated that she was able to perform household chores but had difficulty vacuuming. (Tr. 328.) She used money orders and handled her own paperwork and finances. (Tr. 328.) Bolen placed in the low average range for overall memory functioning, but there were significant discrepancies between subtests which appeared to indicate particular weakness in immediate recall. (Tr. 331-32.) Dr. Hauschild noted that this likely suggested a degree of memory disturbance and that anxiety could be a contributing factor. (Tr.

4

332.) He noted that Bolen "benefits from learning strategies such as using repetition to facilitate storage and using cues to facilitate recall[,]" and "such strategies could be promoted in order to assist her in compensating partially for her memory disturbance . . . . and . . . reduce disruptive anxiety." (Tr. 332.) Dr. Hauschild's diagnosis was major depressive disorder, anxiety disorder, and amnestic disorder. (Tr. 332.)

Dr. Dobson, an Agency physician, reviewed Bolen's medical records in November 2004 and opined that Bolen could occasionally lift and/or carry up to fifty pounds; frequently lift and/or carry up to twenty-five pounds; stand and/or walk for a total of about six hours in an eight-hour workday; sit for a total of about six hours in an eight-hour workday; and perform unlimited pushing and pulling. (Tr. 429-37.) He found that she could never climb ladders, ropes, or scaffolds, and could only occasionally climb ramps and stairs, balance, and crawl. (Tr. 431.) She was also limited in her ability to reach. (Tr. 432.)

In December 2004, Eric M. Schreier, D.O., Bolen's treating physical medicine and rehabilitation specialist, opined that Bolen would be unable to return to factory work. (Tr. 336.) He further speculated that she would not be able to return to light or sedentary work "due to the multiple medical findings, including her inability to drive an automobile at this time due to legal medical requirements." (Tr. 336.)

In January and March of 2005, Drs. Unversaw and Gange reviewed Bolen's medical records for the Agency and made a mental residual functional capacity assessment. (Tr. 423-26.) They assessed that she was moderately limited in the abilities to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, to complete a normal work schedule without interruptions from

5

psychologically-based symptoms and perform at a consistent pace without unreasonable rest periods, and to interact appropriately with the general public. (Tr. 424.) They opined that Bolen retained the capacity for routine, repetitive tasks. (Tr. 425.)

Dr. Smith performed a psychiatric examination of Bolen in February 2005. (Tr. 452.) On examination, Bolen was oriented and alert, and her memory appeared to be good. (Tr. 452.) She also experienced irritability and depression but was not aware of having mood swings. (Tr. 452.) Dr. Smith suspected that she had a mood disorder with some bipolar characteristics, "but the indications of that are only partial." (Tr. 452.) Bolen's concentration was fair. (Tr. 452.) Dr. Smith assigned Bolen a Global Assessment of Functioning (GAF) score of 55[3] (Tr. 452) and increased her dosage of Zoloft. (Tr. 453.) He opined that Bolen's "disability is sufficient; she should qualify for Medicaid." (Tr. 453.)

A year later, in February 2006, Dr. Smith reported that "the transformation in [Bolen] in the past year is remarkable" and that she had become much more functional. (Tr. 464.) In May 2006, Dr. Smith reported that Bolen was trying to deal with her problems maturely and had "come a long way" since she was first seen. (Tr. 466.) In August 2006, Dr. Smith noted that Bolen did not show any evidence of having a severe neurologic problem, and that her mood disorder could become more active again but she was "doing well." (Tr. 467.) He also noted

---

[3] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. American Psychiatric Association, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed., Text Rev. 2000). A GAF score of 41 to 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.* A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.* A GAF score of 61 to 70 reflects some mild symptoms or some difficulty in social, occupational, or school functioning, but "generally functioning pretty well." *Id.* And, a GAF score of 71 to 80 reflects that "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors" and indicates "no more than slight impairment in social, occupation, or school functioning." *Id.*

that August that Bolen's anxiety was "much improved" with the use of her medication, and that she had "less depression." (Tr. 457.)

In May 2007, Dr. Smith wrote a letter to Bolen's attorney in response to being informed that Bolen's disability claim had been denied and that Dr. Smith's treatment notes showing significant improvement had to do with the denial. (Tr. 472.) Dr. Smith opined that despite her improvements, Bolen was "an extremely disabled lady who is unable to work and essentially unable to carry out most of [her] normal activities." (Tr. 472.) He wrote, "The fact of two aneurysms in her brain along with subsequent surgery and loss of brain tissue constitutes disability of a far reaching sort." (Tr. 472.) He remarked that if his report of Bolen's progress disqualified her for disability, he "would think that the system is flawed." (Tr. 472.) Dr. Smith further stated that "many of [Bolen's] disabilities tend to be in medical and neurological fields rather than [the] psychiatric field" and admitted that "the psychiatrist has the least to do professionally with the areas of disability that are most severe." (Tr. 473.) He recommended that additional information be sought from Dr. Bhat and the other doctors, and remarked that he himself was "the physician with the least information on her neurologic disability and the doctor who is most peripheral to [her] treatment." (Tr. 473.) He concluded that Bolen "needs and deserves disability." (Tr. 473.)

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Court's task is limited to determining whether the ALJ's factual findings are

supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## IV. ANALYSIS

### A. *The Law*

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently

unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[4] *See* 20 C.F.R. § 404.1520; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

## B. The ALJ's Decision

The ALJ rendered his decision on July 9, 2007. (Tr. 15-29.) At step one of the five step analysis, he found that Bolen had not engaged in any substantial gainful activity since her alleged onset date. (Tr. 18.) At step two, he found that Bolen had severe impairments of history of aneurysms with subsequent surgical repair, residual seizures, cervical spine surgery with residual neck and right arm pain, mental deficits related to the aneurysm, an affective disorder, and an anxiety-related disorder. (Tr. 19.) The ALJ next determined that from March 15, 2003, through August 1, 2006, Bolen did not have an impairment or combination of impairments that meet or equal a listing. (Tr. 19.) The ALJ explained that during that time, she had the RFC to perform sedentary work, but the "combination of her medical conditions

---

[4] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

9

precluded concentration and regular attendance such that full-time competitive employment could not be sustained." (Tr. 20-21.) Therefore, the ALJ found that from March 15, 2003, until August 1, 2006, Bolen was disabled. (Tr. 20-23.)

The ALJ's analysis, however, was not concluded, because he found that medical improvement occurred as of August 2, 2006. (Tr. 23.) As a result, the ALJ determined that beginning on August 2, 2006, Bolen had the RFC "to perform unskilled simple, repetitive work tasks at a sedentary exertional level of work except that she is unable to work at heights or around hazards such as moving machinery." (Tr. 24-27.) He found that this medical improvement related to her ability to work, and although Bolen was unable to perform her past relevant work as a press operator/machine operator, she could nonetheless perform a significant number of jobs in the economy, as of August 2, 2006. (Tr. 27-28.) The ALJ noted that the VE identified unskilled sedentary jobs such as laminator, assembler, and table worker, and that the VE testified that there are more than a thousand such jobs in the regional economy. (Tr. 28.) Therefore, he concluded that Bolen's disability ended on August 2, 2006. (Tr. 228.)

*C. The ALJ Properly Evaluated the Opinion of Bolen's Treating Psychiatrist, Dr. Smith.*

Dr. Smith opined that Bolen was disabled and expressed concern when he learned that her disability claim was denied. (Tr. 472-73.) The ALJ gave weight to Dr. Smith's findings and observations in the medical record, but not to his conclusion in his May 2007 letter that Bolen is disabled. (Tr. 26-27.) Bolen takes issue with this determination, and as far as we can discern from her brief, she contends that the ALJ improperly discounted Dr. Smith's opinion without adequately explaining why. (Pl.'s Br. 1-2.)

Bolen's contentions fail to warrant a remand. Although an ALJ may ultimately decide to

10

adopt the opinions expressed in a medical source statement concerning the ability of a claimant to perform work-related activities, the RFC assessment is an issue reserved to the ALJ. 20 C.F.R. § 404.1527(e); SSR 96-5p. Thus, Dr. Smith's opinion concerning Bolen's work ability is *not* determinative of the RFC that the ALJ assigned. *See* SSR 96-5p ("[A] medical source statement must not be equated with the administrative finding known as the RFC assessment.") (emphasis added).[5]

Following a comprehensive discussion of the medical evidence as a whole (including Dr. Smith's records), the ALJ set forth a thorough and lengthy analysis concerning why he discounted Dr. Smith's opinion. The ALJ's analysis focused on the inconsistencies between Dr. Smith's letter advancing that Bolen is unable to work, and his own treatment records and the other medical evidence. The Seventh Circuit Court of Appeals has stated that "more weight is generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870; *see also* 20 C.F.R. § 404.1527(d)(2). However, this principle is not absolute, as "a treating physician's opinion regarding the nature and severity of a medical condition is [only] entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford*, 227 F.3d at 870; *see also* 20 C.F.R. § 404.1527(d)(2); *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002). "[T]he patient's regular physician may want to do a

---

[5] This point also goes directly to a question Bolen posed in her brief. Bolen stated that her doctor had not released her to return to work, and therefore she did not understand how the ALJ found that she is not disabled. (Pl.'s Br. 1.) Because the determination of a claimant's RFC is an issue reserved for the ALJ, the doctor's conclusion that Bolen cannot return to her past employment is not binding on the ALJ. *See* 20 C.F.R.§ 404.1527(e); SSR 96-5p. Furthermore, the ALJ agrees that Bolen is unable to perform her past relevant work as a press operator/machine operator, but rather concluded, in compliance with regulatory procedure, that given her age, education, work experience, and RFC, there are a significant number of *other* jobs in the national economy that she can now perform. (Tr. 28.)

11

favor for a friend and client, and so the treating physician may too quickly find disability." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (quoting *Books v. Chater*, 91 F.3d 972, 979 (1996); *Stephens v. Heckler*, 766 F.2d 284 (7th Cir.1985)) (internal quotation marks omitted).

An ALJ may discount a treating physician's medical opinion due to inconsistencies internally and with other opinions of record, "as long as he minimally articulate[s] his reasons for crediting or rejecting evidence of disability[.]" *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (internal quotation marks omitted). The ALJ reasoned, "Dr. Smith's opinion that the claimant is essentially unable to carry out most normal activities is not supported by or consistent with the medical evidence of record, or even the claimant's reasonably fully acknowledged daily activities." (Tr. 26.) The ALJ seized upon a significant inconsistency regarding Dr. Smith's conclusion that she is disabled – that he had stated in the treatment records that Bolen does not exhibit a severe neurological problem. The ALJ pointed out that although Dr. Smith wrote that he would consider the disability system flawed if Bolen's medical improvement precluded a finding of disability, "the intent of medical treatment is to progress (improve), which Dr. Smith wholly acknowledges has occurred in the case of the claimant, as evidenced by Dr. Smith's clear statement within the medical treatment record that the claimant does not show evidence of having a severe neurological problem." (Tr. 26.) Given that Dr. Smith's own treatment records failed to support his later opinion that Bolen is not functional enough to work, the ALJ was entitled to assign Dr. Smith's opinion less weight.

The ALJ also highlighted that Dr. Smith reported in his letter "that many of the claimant's conditions tend to be in the medical and neurological fields" and thus deferred "to other treating sources . . . [because] he is the physician with the least information on her

12

neurological disability and he is the physician who is the most peripheral to the claimant's treatment." (Tr. 27.) The ALJ found that these statements were inconsistent with Dr. Smith's prior statements in the treatment records confidently opining about Bolen's improvement and functionality, particular in light of the fact that he is "physician/psychiatrist rather than a psychologist" who "possesses the medical knowledge to seemingly make a reasonably informed medical observation as to whether [Bolen] does or does not show evidence of having a severe neurological problem or whether such a problem has, in fact, medically improved[.]" (Tr. 27.) The ALJ further reasoned that the dearth of records revealing any treatment for her allegedly disabling conditions from any other sources *after December 2004* contradicted Dr. Smith's assertion that Bolen's condition continued to preclude her from work after August 1, 2006.[6] (Tr. 25, 27.)

Therefore, contrary to Bolen's assertion that the ALJ failed to explain why he discounted Dr. Smith's opinion that she is disabled, the ALJ in fact analyzed inconsistencies between Dr. Smith's letter and his earlier notes and the medical treatment record as a whole. *See Ketelboeter v. Astrue*, __ F.3d __, 2008 WL 5205816, at *4 (7th Cir. Dec. 15, 2008) (discounting a treating physician's opinion because it was internally inconsistent); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) ("An ALJ . . . may discount a treating physician's medical opinion if . . . the opinion 'is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is *internally inconsistent*, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability.'" (quoting *Skarbek*, 390 F.3d at 503 (emphasis added)); *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) ("Medical evidence may be

---

[6] The ALJ explained in another portion of the opinion that both the ALJ and the attorney sought updates from Dr. Bhat and Dr. Young, but no additional records were received that were dated after December 2004.

discounted if it is internally inconsistent or inconsistent with other evidence.").

Moreover, the ALJ adequately analyzed the applicable regulatory factors in weighing his opinion. *See generally Books*, 91 F.3d at 979 (articulating that when conflicting medical evidence exists, the ALJ must consider the factors set forth in the regulations); 20 C.F.R. § 404.1527(d)(2). The ALJ considered the nature and extent of the treatment relationship, repeatedly acknowledging that Dr. Smith was Bolen's treating psychiatrist and detailing Dr. Smith's treatment of Bolen as presented by the medical records. (Tr. 25-26); *see* 20 C.F.R. § 404.1527(d)(2)(ii). And accordingly, the ALJ gave weight to Dr. Smith's findings in his treatment notes, which reflected significant improvement. Ultimately, however, as we have just discussed, the factors of consistency and supportability undermined his conclusion that Bolen is currently disabled. *See* 20 C.F.R. § 404.1527(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.").

"If the ALJ discounts the physician's opinion after considering these factors, we must allow that decision to stand so long as the ALJ 'minimally articulate[d]' his reasons – a very deferential standard that we have, in fact, deemed 'lax.'" *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (citing *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (internal quotation marks and citation omitted)). And here, given that the ALJ provided detailed reasoning why he found Dr. Smith's opinion that Bolen is disabled to be inconsistent and unsupported by the recent medical evidence, the ALJ has met his burden of articulation. Accordingly, the ALJ's evaluation of Dr. Smith's opinion will stand.

### D. The ALJ Properly Considered Bolen's Memory Test Results.

Bolen also contends that the ALJ failed to consider her low memory test scores. "[T]he ALJ's decision must be based upon consideration of all the relevant evidence, and . . . the ALJ must articulate at some minimal level his analysis of the evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) (internal quotation marks and citations removed). "Thus, although the ALJ need not discuss every piece of evidence in the record . . . he may not ignore an entire line of evidence that is contrary to the ruling . . . . Otherwise it is impossible for a reviewing court to tell whether the ALJ's decision rests upon substantial evidence." *Golembiewski v. Barnhart*, 322 F. 3d 912, 917 (7th Cir. 2003) (citations omitted); *see also Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002). Nevertheless, the Seventh Circuit Court of Appeals counsels that "even a 'sketchy opinion' is sufficient if it assures us that an ALJ considered the important evidence and enables us to trace its reasoning." *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003).

In fact, the ALJ *specifically considered* Bolen's psychological consultative examination in November 2004 and the testing she underwent. The ALJ wrote:

> A State Agency psychological consultative examination with psychometric testing performed on November 29, 2004 reflected low average memory functioning, but significant differences that occurred among various component index scores appeared to reflect a pattern that indicated particular weakness in the free recall of information, which likely suggested a degree of memory disturbance of which anxiety may have been a contributing factor. Working memory was assessed to be within the average range, but the claimant performed poorly in immediate memory, and anxiety again was believed to play at least some role in her poor performance in immediate memory. It was further reported that the claimant benefit[t]ed from learning strategies such as using repetition to facilitate storage and using cues to facilitate recall. Additionally such strategies could be promoted in order to assist the claimant in compensating partially for her memory disturbance.

(Tr. 21.) The ALJ then ultimately concluded that Bolen's combination of mental and physical

15

impairments precluded her from engaging in competitive full-time employment during the period of March 15, 2003, to August 1, 2006. Thus, not only did the ALJ acknowledge Bolen's test scores, but his consideration of her memory deficits factored into his determination that she was disabled for a time.

In finding that after August 1, 2006, Bolen was not disabled, the ALJ further addressed her memory deficits, noting that Dr. Smith's records reflected improvement in her memory as early as February 2005. (Tr. 25.) The ALJ further reasoned that although the November 2004 psychological evaluation observed that Bolen's memory problems are exacerbated by anxiety, Dr. Smith's treatment records reflected improvement in Bolen's ability to deal with anxiety by at least August 2006. (Tr. 25.) Thus, the ALJ concluded:

> There is no evidence for recurrence of any additional aneurysm, and the medical evidence of record shows that the residuals from the claimant's previous aneurysms and surgeries improved considerabl[y] by December 2004 as evidenced by the reported lack of adverse findings made during State Agency internal medicine and psychological consultative examinations prior to December 2004. This is not to say these conditions in combination were not disabling during the relevant period, as in combination they are found to be; however, given the medical findings that reflect improved functioning beginning by at least December 2004, given the lack of medical evidence that indicates the claimant's conditions worsened since December 2004, and given the medical treatment records from treating psychiatrist, Dr. Don Smith, dated August 2006, which even prior to that reflect his observations of the claimant's improved functioning such that she does not show any evidence of having a severe neurologic problem, the claimant's overall ability to function in a competitive environment is found to have improved by August 2006.

(Tr. 26.)

Therefore, this is not an instance where the ALJ ignored an entire line of evidence. *See Golembiewski*, 322 F.3d at 917. On the contrary, the ALJ clearly considered Bolen's memory test scores, and in light of her subsequent improvement, his reasoning that Bolen is no longer

16

disabled is easily traced. *See Brindisi*, 315 F.3d at 787 (explaining that analysis is sufficient if it "assures us that an ALJ considered the important evidence and enables us to trace its reasoning"). Consequently, the ALJ's consideration of Bolen's memory test results is not a basis for remand.

## V. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment in favor of the Commissioner and against Bolen.

SO ORDERED.

Enter for this 22nd day of December, 2008.

S/Roger B. Cosbey  
Roger B. Cosbey,  
United States Magistrate Judge